In the Matter of the Arbitration between STATES MARINE LINES, INC., Appellant, and CHARLES M. CROOKS, as International President of International Organization of Masters, Mates and Pilots, Respondent.

First Department, May 23, 1963.

*Harry G. Liese* of counsel (*Thomas A. Liese* with him on the brief; *Herman Goldman,* attorney), for appellant.

*Betty H. Olchin* of counsel (*Donald E. Klein* with her on the brief; *Marvin Schwartz,* attorney), for respondent.

*Arthur S. Olick* of counsel (*Robert M. Morgenthau, United States Attorney*), for United States of America, *amicus curiæ.*

BERGAN, J. A collective bargaining agreement between petitioner States Marine Lines, Inc., and the International Organization of Masters, Mates and Pilots, entered into July 5, 1961, provided that when vessels of a new type of power plant be put in operation " the issue of the wages to be paid " licensed deck officers should be submitted to arbitration upon a failure to negotiate successfully.

States Marine Lines, in pursuance of an agreement with the United States, undertook to operate the N/S *Savannah,* the first merchant ship using nuclear power. The ship had been built by the Government as part of the United States Program for Peaceful Uses of Atomic Energy.

Since this obviously was a vessel possessed of a new type of power plant within the labor contract, the union raised the " issue of wages to be paid ", which was referred to a board in pursuance of the contract. The board failed to resolve it; and, accordingly, the issue was submitted to arbitration. The Secretary of Labor of the United States designated Walter Gellhorn, professor of law at Columbia University, as arbitrator in pursuance of a provision of the contract.

Extensive hearings were had before the arbitrator, who decided the amounts to be paid by the ship company monthly to each grade of licensed deck officers on the ship. The award also provided, and this has become the controverted issue in the case, that the monthly wage should in any event be at least a specified amount higher than the wage of certain licensed engineer officers on the ship of corresponding grades.

It would simplify this to take one example which in principle typifies the rest. The award provided that the commodore (or master) was to receive $1,500 a month, " or $200 more than the Chief Engineer's basic monthly wage (whichever is greater) ".

The employer argues that the arbitrator exceeded his powers and that the award is invalid because it is not mutual, final and definite (Civ. Prac. Act, § 1462, subd. 4). The court at Special Term has denied the employer's motion to vacate the award on these grounds.

The arbitrator did not exceed his powers. It would not be easy to conceive of a broader cast of language than that

employed in the arbitration clause in this labor contract. The "issue of the wages to be paid" upon the vessel with a new type of power plant being put in operation is literally without limit and places every aspect of the wage controversy within the power of the arbitrator.

It is argued also by the employer, because the amount payable pursuant to the award may depend on wages to be fixed for licensed engineers who are represented by another union, that the arbitrator exceeded his powers in attempting to bind the other union. But the award does not affect or bind anyone but the employer and the respondent union, who were before the arbitrator; nor has it been made apparent that the engineers' union has any legal interest or right to complain about an award between the employer and this group of employees based upon an actual labor controversy between them.

The award is final and definite enough to meet the statutory requirement. It is not a valid objection to an award to say that the amount payable may depend on a computation the base of which may change from time to time, if it be certain that at the time the computation must be made the base will be definite and ascertainable.

A good illustration of this principle is *Matter of Hunter* v. *Proser* (274 App. Div. 311, affd. 298 N. Y. 828). The decision in *Matter of Overseas Distrs. Exch. (Benedict Bros. & Co.)* (5 A D 2d 498) recognizes this general rule.

In the case before us these essential conditions are met. The salary of the commodore under the award will be at least $1,500 a month. If the chief engineer on the same vessel and on the same payroll of the same employer gets $1,400 a month, the commodore must get $1,600; and this progression will be followed upward.

The employer need merely look at another place on its own payroll record to compute the amount that it will pay the commodore in any month. We see nothing indefinite or incomplete about this. Many bases of computation which fluctuate, but which are definite and ascertainable readily suggest themselves — e.g., the cost of living index on a particular date, or the number of busses of an employer which operate on any given day from a terminal point.

Here all the employer need do to determine the wage it must pay the commodore in any month is to take note of an entry in its own books; and if it is in excess of $1,300 to make an appropriate exercise of addition.

Even if there were more doubt about this than the demonstated capability of the employer to ascertain what it must pay

the deck officers would suggest, it would be resolved favorably to the award in this case because of the general practice in the marine industry and the particular practice of this employer. An award in a labor controversy must be evaluated in the setting of relevant labor practice and custom.

The proof in the record before the arbitrator established quite clearly that there is a general interrelationship in wage scale between the licensed deck officers and licensed engineers. The history of the industry suggests that the wages of the two groups have been approximately equal with a tendency to pay somewhat higher wages to the deck officers who had over-all command of the ship. Atomic power created new technical problems for engineers dealing directly with it and required special training; but its special dangers created new general navigational and safety problems for deck officers who also needed special training.

Besides this, the petitioner-employer itself recognized both the interrelationship between wages of the two groups of officers and the policy of keeping the deck officers' wage somewhat higher than the engineers' wage and fluctuating with the latter wage, by a significant general provision of the same collective bargaining agreement now before us for construction.

Dealing with diesel-driven vessels, the agreement provides that the minimum monthly wage rate for masters " shall always be " an amount $25 " higher than the rate for Chief Engineers " on similar vessels. The employer would have no more trouble following the award here in dispute than it would complying with this provision of its own contract.

The order should be affirmed, with costs.

EAGER, J. (dissenting). The award, insofar as it is attacked here, appears to be beyond the scope of the arbitrator's powers. Furthermore, instead of finally, definitely and conclusively determining the " issue of wages to be paid " the deck officers, the award leaves the issue in a state of flux and uncertainty. In fact, contrary to the contract and intention of the parties, the award has tended to frustrate rather than to promote the settlement of wage disputes aboard the vessel N/S *Savannah*.

The arbitration was had pursuant to the terms of a collective bargaining agreement, dated July 5, 1961 with the respondent union (hereinafter referred to as " MM&P ") covering licensed deck officers employed on vessels owned and operated by States Marine Lines, Inc. (hereinafter referred to as the " Employer "), including vessels operated by it as agent for any United States Government agency. At about the time of this agreement, a separate bargaining agreement was also made with

the National Marine Engineers Beneficial Association (hereinafter referred to as " MEBA ") as the collective bargaining agent for licensed engineers upon the vessels. Both agreements contained provisions for redeterminations of wages where employees were engaged to serve upon " vessels with a new type power plant ", and the agreements further provided that, in the event of a disagreement in negotiations, " the issue of the wages to be paid " to the employees on such vessels should be submitted to arbitration.

The Employer was designated to operate the N/S *Savannah*, the world's first nuclear powered cargo-passenger ship and, acknowledging that this ship was a " vessel with a new type power plant ", it entered into wage negotiations with the two unions. The parties, however, were unable to arrive at an agreement as to wage scales and duties of employees upon this particular vessel and there resulted a work stoppage. Thereupon, the employer invoked the grievance machinery provided under the collective bargaining agreements and the matters in dispute were submitted to arbitration.

The arbitration of " the issue of the wages to be paid to the licensed deck officers " aboard the N/S *Savannah* has been completed. The arbitrator's award, however, in effect merely provides for a minimum monthly wage scale for the deck officers, and further provides that, in any event, such officers, from the commodore down to and including the third mate are to receive a wage to be calculated on the basis of the wages paid by the employer to the N/S *Savannah's* chief engineer and assistant engineers. The provisions of the ward for the basic monthly wage scale for the said officers are the following, to wit:

" a) *Commodore* (or Master) — $1500, or $200 more than the Chief Engineer's basic monthly wage (whichever is greater);

" b) *Staff Captain* — $1400, or $100 more than the Chief Engineer's basic monthly wage (whichever is greater);

" c) *Chief Mate* — $200 less than the Staff Captain's basic monthly wage;

" d) *Second Mate* and *Third Mate* — during the first three months of service aboard the N. S. SAVANNAH, the rates for officers of equivalent ranks in Class A-1 vessels; thereafter, the rates for officers of equivalent ranks in Class A-3 vessels, or ninety percent of the respective rates for Second and Third Assistant Engineers in the N. S. SAVANNAH (whichever is greater)."

When this award of the arbitrator was announced, the N/S *Savannah's* engineers resigned in protest against the fixing by

the award of what amounted to an arbitrary differential between the wages to be paid the two groups of employees. Moreover, in a pending arbitration proceeding having to do with the separate wage dispute between the Employer and MEBA representing the engineers, the arbitrator therein advised the parties that he regarded it as unwise to proceed because the aforesaid award made it impossible for the Employer to consider " on the merits any proposal of M. E. B. A. which even if fair to the company and the licensed engineers would if accepted compel the company * * * to increase the wages of the licensed deck officers beyond what good business judgment would support."

In consequence of the foregoing, the N/S *Savannah* was immobilized for a time, but then, finally, the engineers agreed to remain on the job pending negotiation of the disputes. However, now, as I understand it, the wage disputes between the parties have resulted in the further immobilization of the N/S *Savannah.* So, it would appear that, instead of the arbitration here contributing to an eventual settlement of the labor disputes, as intended by the parties, the award now rendered has had the effect of promoting a serious condition of labor unrest aboard this vessel.

The tieing in by the award of the wages of the deck officers to engineers' wages, which are still open and unsettled, was not expressly authorized by the agreement of the parties and the result is that we have an award which is indefinite, nonfinal and inconclusive.

It is fundamental in the law of arbitration that awards " must be within the submission, certain to a common intent, and final. [Citing cases.] They must be within the submission, because to no other subjects or questions, than those embraced therein, does their authority extend; they must be certain that the parties may know their respective rights and obligations; they must be final that they may not be remitted to a new controversy." (*Hiscock* v. *Harris,* 74 N. Y. 108, 113.) So, it is expressly provided by statute that an award " must " be vacated where the arbitrators " so imperfectly executed " their powers " that a mutual, final and definite award upon the subject-matter submitted was not made " (Civ. Prac. Act, § 1462, subd. 4).

Here, the arbitrator has " imperfectly executed " the submission in that, instead of fixing a " final and definite " scale of wages for the particular deck officers, he has, in effect, merely fixed a minimum wage to be paid to them and then provided for a maximum wage to be calculated by applying a differential to an uncertain and controversial base. This base, namely, the

wages to be paid to engineers upon the vessel, as he well knew, was unsettled and the subject of further negotiations or proceedings. Therefore, the final determination of the issue of wages to be paid the deck officers was evaded and left unsettled pending the outcome of what wages were to be paid the engineers.

In effect, the award here predicates the wages of the deck officers upon the result of an independent, separate and undetermined arbitration proceeding pending between the Employer and another union, the MEBA. The arbitrator has set an ultimate wage for deck officers to be based upon a differential which would be applied to the wages to be established for the engineers in this other proceeding. Thereby, he has exceeded his powers or, in any event, "imperfectly executed" them in that, by virtue of the respective collective bargaining agreements, it is clear that each arbitration tribunal was empowered only to determine the proper scale of wages for the employees represented by the union appearing before the particular tribunal, and no others.

Furthermore, it should be noted that the application of the differential fixed by the arbitrator to the uncertain and controversial engineer wage base could very well result in a maximum wage for the deck officers which if he had given due consideration to the matter, would be held to constitute an exorbitant and improper wage for them, but he has failed to exercise his judgment in this connection.

This is not a case of an award which may be said to be sufficiently definite and final in that the wages to be paid may be ascertained by mere "ministerial acts or arithmetical calculations" to be carried out on basis of reasonably definite criteria. (See *Overseas Distrs. Exch.* [*Benedict Bros. & Co.*], 5 A D 2d 498, 499.) The difficulty here is that the calculations required for the fixing of the wages to be paid the particular deck officers depend upon the result of further negotiations and proceedings and, thus, the award is nonfinal as well as uncertain. Applicable here is *Herbst* v. *Hagenaers* (137 N. Y. 290, 295), where the court said: "The award in question does not answer these requirements. It left matters properly embraced in the submission open for future contention and hence it was not final as something was still left to be done in order to accomplish the result which the parties had in view. It was not definite for whereas the question submitted was clearly capable of determination by directing the payment of a fixed sum of money the award does not do that. True, it names an amount to which the appellant is entitled, but it also provides that he is entitled, in addition to another sum not named or fixed, but to be ascertained from the books of the firm. The judgment to be entered on this award

cannot possibly without some other proceeding, be any more definite than the award itself and thus would not definitely or finally determine the rights and interests of the parties. The award contemplated some further action by some one in order to ascertain what further sum, if any, was due to appellant upon the firm books.''

The failure of the award here to accomplish a certain and final disposition of the issues submitted arises from the attempt on the part of the arbitrator to reach beyond the four corners of the agreement between the parties and to take on an issue not submitted to him. Aside from his failure to face up with the realities involved in the settlement of wage disputes where rival unions·were in the picture, the arbitrator has strayed from the precise framework of the issue before him to assume powers which were not conferred upon him. Without having the engineers or the union representing them before him, and, as he stated, ''having no powers over the engineers' rates'', he endeavored to establish an arbitrary differential between the wages paid to them and the wages of the deck officers, and thereby he sought to and did adjudicate an issue not submitted to him.

In substance, the arbitrator here, without the power, did gratuitously assume the arbitration of and the making of an award upon the issue of wage scale differences between the rival unions, MM&P and MEBA. To this extent his award does not bind MEBA and, therefore, because also lacking the quality of mutuality, may not bind the Employer. It should not stand.

The award here, insofar as it fixes the wages of the deck officers, should be vacated, in that the arbitrator has imperfectly executed his powers with the result that a mutual, final and definite award upon the subject matter submitted to him was not made.

McNALLY, J. P., and STEUER, J., concur with BERGAN, J.; EAGER, J., dissents in opinion, in which STEVENS, J., concurs.

Order, entered on January 11, 1963, affirmed, with $20 costs and disbursements to the respondent.